IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF/RESPONDENT

V.                          Criminal No.   2:15-cr-20007-PKH-MEF-1
                            Civil No. 2:16-cv-02248-PKH-MEF

ERIK LOTVEDT                                                DEFENDANT/PETITIONER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or

Correct Sentence by a Person in Federal Custody filed on October 17, 2016.  (ECF No. 34).  The

Government filed its response on November 9, 2016.  (ECF No. 39).  Petitioner filed a reply to the

Government's response on December 2, 2016.  (ECF No. 40).  An evidentiary hearing was held on

July 24, 2017.  The matter is ready for report and recommendation.

## I.  Background

On April 15, 2015, Defendant/Petitioner, Erik Lotvedt ("Lotvedt"), was named in an

Indictment charging him with four counts of receipt of child pornography, in violation of 18 U.S.C.

§§ 2252(a)(2) and (b)(1), and one count of possession of child pornography, in violation of 18 U.S.C.

§§ 2252A(a)(5)(B) and (b)(2).  (ECF No. 1).  Lotvedt was arrested on April 17, 2015, and he

appeared before the Hon. Mark E. Ford, U. S. Magistrate Judge, for arraignment on April 21, 2015,

at which time Lotvedt entered a not guilty plea to the Indictment.  (ECF No. 6).  Mr. James B. Pierce

("Pierce"), Assistant Federal Public Defender, was appointed to represent Lotvedt.  (ECF Nos. 6, 8).

Pierce requested discovery in open court.  (ECF No. 6).

On June 4, 2015, Lotvedt appeared with counsel before the Hon. P. K. Holmes, III, Chief

U.S. District Judge, for a change of plea hearing. (ECF No. 17). A written Plea Agreement (ECF No. 18) was presented to the Court; Lotvedt executed a Waiver of an Indictment (ECF No. 14); and, Lotvedt pleaded guilty to an Information charging him with using, persuading, inducing, enticing, and coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction, in violation of 18 U.S.C. §§ 2251(a) and (e). (ECF No. 15). The Court accepted the plea and ordered a presentence investigation. (ECF No. 17).

An initial Presentence Investigation Report ("PSR") was prepared by the United States Probation Office on August 7, 2015. (ECF No. 21). On August 17, 2015, the Government advised that it had no objections to the PSR. (ECF No. 23). On August 24, 2015, Lotvedt advised that he had eight objections to the PSR. Seven of Lotvedt's objections concerned reported facts he disputed or wanted to be corrected that had no bearing on the USSG calculation; one objection related to the specific offense characteristics enhancement assessed pursuant to USSG § 2G2.1(b)(4) for material that portrays sadistic and masochistic conduct or other depictions of violence. (ECF No. 24). Lotvedt's counsel noted, however, that even if the specific offense characteristics enhancement was removed, the USSG calculation would still result in the same total offense level. (Id.).

On September 2, 2015, a final PSR was submitted to the Court. (ECF No. 25). The Probation Officer addressed Lotvedt's objections in an Addendum to the PSR, and no significant changes were made to the PSR. (ECF No. 25-1). The final PSR determined that Lotvedt's conduct called for a base offense level of 32. (ECF No. 25, ¶ 51). Finding that the offense involved a minor who had not attained the age of 12 years, the offense level was increased by four levels. (ECF No. 25, ¶ 52). A two-level increase was assessed because the offense involved the commission of a sexual act or sexual contact. (ECF No. 25, ¶ 53). A four-level increase was assessed because the

offense involved material that portrays sadistic and masochistic conduct or other depictions of violence. (ECF No. 25, ¶ 54). Finally, a two-level enhancement was made because Lotvedt was a parent, relative, or legal guardian of the minor involved in the offense, or the minor was otherwise in the custody, care, and supervisory control of Lotvedt. (ECF No. 25, ¶ 55). Due to these enhancements, Lotvedt's adjusted offense level was determined to be 44. (ECF No. 25, ¶ 59).

Since the offense conduct involved the exploitation of more than one minor, grouping was used pursuant to USSG § 2G2.1(d)(1), Application Note 5. (ECF No. 25, ¶ 60). The PSR reported an adjusted offense level of 38 for Group Two. (ECF No. 25, ¶¶ 61-68). The combined adjusted offense level was determined to be 45. (ECF No. 25, ¶¶ 69-72). A five-level enhancement was assessed pursuant to USSG § 4B1.5(b)(1) (ECF No. 25, ¶ 73), raising Lotvedt's final adjusted offense level to 50 (ECF No. 25, ¶ 74). After a three-level reduction for acceptance of responsibility was made, Lotvedt's total offense level was determined to be 47. (ECF No. 25, ¶¶ 75-77). Lotvedt's lack of criminal history resulted in a criminal history score of zero, placing him in criminal history category I. (ECF No. 25, ¶¶ 82-85).

The statutory minimum term of imprisonment for Lotvedt's offense is 15 years and the maximum term is 30 years. (ECF No. 25, ¶ 103). A total offense level greater than 43 is to be treated as an offense level of 43. (ECF No. 25, ¶ 104). Based upon a total offense level of 43 and a criminal history category of I, Lotvedt's advisory guidelines range was determined to be Life imprisonment; however, pursuant to USSG § 5G1.2(d), where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence, therefore, Lotvedt's guideline range was determined to be 360 months imprisonment. (Id.).

Lotvedt appeared for sentencing on October 27, 2015. (ECF Nos. 30, 38). After finding that the four-level enhancement for an offense involving material that portrays sadistic and masochistic conduct or other depictions of violence was proper (ECF No. 38, pp. 6-10), the Court determined that Lotvedt's total offense level was 43 and his criminal history category was I (ECF No. 38, pp. 11-13), resulting in an advisory guidelines range of 360 months imprisonment (ECF No. 38, p. 13). Lotvedt's counsel argued that Lotvedt's conduct was not at the most egregious end of the spectrum of such exploitative conduct, and he advocated for a downward variance and a 15 year sentence. (ECF Nos. 29; 38, pp. 15-19). Agreeing that the guidelines "do not distinguish really between the worst offenders and the least offenders" (ECF No. 38, p. 21), the Court varied downward from the advisory guidelines sentence of 360 months imprisonment to impose a sentence of 300 months imprisonment (ECF No. 38, pp. 21-22). Supervised release for 10 years was imposed, with a special condition that except for purposes of employment Lotvedt shall not possess, use, or have access to a computer or any other electronic device that has internet or photography capabilities without prior approval of the United States Probation Office; no fine was imposed; and, a $100.00 special assessment was imposed. (ECF No. 38, pp. 22-23). Judgment was entered by the Court on October 28, 2015. (ECF No. 32). Lotvedt did not pursue a direct appeal.

On October 17, 2016, Lotvedt filed his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "motion"). (ECF No. 34). The motion raises four grounds for relief: (1) ineffective assistance of counsel due to trial counsel's failure to file an appeal; (2) ineffective assistance of counsel for failing to object to special condition number five of supervised release; (3) ineffective assistance of counsel for failing to request a psychological evaluation and competency hearing; and, (4) ineffective assistance of counsel for inducement of a

-4-

guilty plea by the promise of a specific sentence which Lotvedt did not receive. (ECF No. 34, pp. 5-6, 8, 10, 13-14).

The United States' response in opposition to the motion was filed on November 9, 2016. (ECF No. 39). Attached to the response as an exhibit is a Notice of Non-Appeal signed by Lotvedt on November 2, 2015. (ECF No. 39-1).

Lotvedt filed a reply on December 2, 2016. (ECF No. 40). In it, Lotvedt claims he "was under the impression that he was signing a (sic) appeal waiver and that he can still appeal." (ECF No. 40, p. 2).

The Court appointed counsel, Patrick Flake, to represent Lotvedt in these proceedings, and an evidentiary hearing was scheduled. (ECF No. 41). The undersigned held an evidentiary hearing on July 24, 2017. (ECF No. 47) Lotvedt appeared in person and testified on his own behalf. His mother, Sheila Lotvedt, and his wife, Amber Lotvedt, also testified. (Id.). Two witnesses appeared and testified for the Government: Rafael Marquez (an interpreter/investigator for the Federal Public Defender's office) and James B. Pierce (Lotvedt's trial counsel). (Id.).

## II. Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or

infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). A thorough review of Lotvedt's motion, the files and records of this case, and the evidence presented at the evidentiary hearing, conclusively shows that Lotvedt is not entitled to relief, and the undersigned recommends the denial and dismissal of Lotvedt's § 2255 motion with prejudice.

## A. Legal Standard for Ineffective Assistance of Counsel Claims

To prove a claim of ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the deficient performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id.* at 688. Review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690). Courts also "do not use hindsight to question counsel's performance," but instead must analyze it according to counsel's situation at the time of the allegedly incompetent act or omission. *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir. 1991). If one fails to establish deficient performance by counsel, the court need proceed no further in its analysis of an ineffective assistance of counsel claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The United States Supreme Court has clarified that the proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (quoting *Strickland*, 466 U.S. at 687).

The *Strickland* test applies to claims, like Lotvedt's, that counsel was constitutionally ineffective for failing to file a notice of appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). A lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. *Id*. (internal citations omitted). This is so "because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice;" failure to do so cannot be considered a strategic decision, as "filing a notice of appeal is a purely ministerial task;" and, "the failure to file reflects inattention to the defendant's wishes." *Id*. As for prejudice, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id*. at 484. Thus, an attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance of counsel entitling a petitioner to § 2255 relief, with no inquiry into prejudice or likely success on appeal being necessary. *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (citing *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000) and *Roe v. Flores-Ortega*, 528 U.S. at 478).

For such a claim to succeed, however, "the defendant must show that he manifestly instructed

his counsel to file an appeal. *Walking Eagle*, 742 F.3d at 1082 (internal quotation and citation omitted). "A bare assertion by the petitioner that [he] made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." *Id*.

### B. Failure to File Appeal

Lotvedt claims that "[a]fter sentencing, [he] told attorney Pierce that he wanted to appeal his case because his sentence was too high[,]" and that "[a]ttorney Pierce told Petitioner that he was not allowed to appeal his sentence because of his plea agreement." (ECF No. 34, p. 5). In his supporting affidavit, Lotvedt states:

> After Judge Holmes pronounced a sentence of 300 months, I turned to my court appointed attorney James B[.] Pierce and told him that I wanted to appeal my sentence because it was not the sentence of 15 years that he told me I would get. Attorney Pierce then told me "sorry you can't appeal because of your plea agreement. Good luck to you." I again told him "well appeal anyways." I was then escorted by the Marshals back to the holding area. At no time after me asking attorney Pierce to appeal, did he contact me about an appeal.

(ECF No. 34-1, p. 2).

In his reply, Lotvedt alleges that "one of Mr. Pierce's paralegals came to see [him] at the county jail and have him sign some paperwork that he assumed was the plea waiver that was part of the plea agreement," that "at no time did [he] know it was a non-appeal form," and that "Petitioner was under the impression that he was signing a (sic) appeal waiver and that he can still appeal." (ECF No. 40, p. 2).

Upon careful consideration, I find Lotvedt's claim that his counsel failed to file a requested appeal to be contrary to the evidence of record. There is no dispute that a notice of appeal was never

filed. The credible evidence shows that no appeal was filed because Lotvedt, after consultation with counsel, voluntarily chose not to appeal.

Lotvedt testified he told Pierce at sentencing that he wanted to appeal. Contrary to his affidavit stating "at no time after me asking attorney Pierce to appeal, did [Pierce] contact me about an appeal" (ECF No. 34-1, p. 2), Lotvedt testified that Pierce did, in fact, come see him about a week after sentencing. While Lotvedt admitted he signed the Notice of Non-Appeal (ECF No. 39-1), he testified that he thought the form was to initiate the appeal. When Pierce told him otherwise, he asked Pierce for § 2255 papers. Pierce provided them. Lotvedt testified at the hearing "I have a horrible memory," and on cross-examination he admitted it is possible his bad memory has affected his recollection of events in this case.

Pierce testified that Lotvedt was disappointed and upset at the sentencing, but that he was unsure of an appeal at that moment. He recalled that Lotvedt did not call the next day, and that Lotvedt's mother, Sheila Lotvedt, called him on October 30, 2015. Pierce said Lotvedt's mother told him not to appeal, and that her son should go the § 2255 route. An investigator for the Federal Public Defender's Office, Rafael Marquez, met with Lotvedt, and Lotvedt was still unsure of an appeal. On November 2, 2015, Pierce and Marquez met with Lotvedt to discuss an appeal. During this meeting, Lotvedt's mother's feeling were discussed, and Lotvedt chose to forego an appeal and to pursue a § 2255 proceeding instead.

As for Lotvedt's claim that Pierce told him no appeal could be taken because of the Plea Agreement, an examination of the Plea Agreement reveals that no appeal waiver is contained in it. (ECF No. 18). Accordingly, I do not find Lotvedt's assertion on this point to be credible.

Lotvedt acknowledged his ability to read and write at his arraignment on April 21, 2015.

(ECF No. 45, p. 2). According to both Pierce and Marquez, Lotvedt read the Notice of Non-Appeal form before signing it on November 2, 2015. The Notice of Non-Appeal form states:

> "I am a defendant in this case, and I have now been sentenced. I know that I have the right to appeal to the 8th Circuit Court of Appeals. I have discussed my case with my attorney and I have decided not to pursue an appeal." (ECF No. 39-1).

Lotvedt testified he thought the Notice of Non-Appeal was actually a form used to *initiate* an appeal. Lotvedt's testimony on this point is just not credible. The title of the form itself indicates that it is a notice of *non-appeal*, and in understandable language it states that after consultation with counsel "*I have decided not to pursue an appeal*." Despite Lotvedt's 11th grade education (ECF No. 45, p. 2), this plain and simple language cannot reasonably be misunderstood to mean that by signing the form Lotvedt was actually initiating an appeal. Further, Lotvedt had been in regular contact with Pierce, and after signing the Notice of Non-Appeal Lotvedt never called or wrote to Pierce or the Court to check on the status of any requested appeal. In my view, Lotvedt's allegations on this point were a fiction created to establish a question of fact to obtain an evidentiary hearing on the issue. In view of the evidence presented at the hearing, I find Lotvedt's claim that he requested an appeal to be completely unsubstantiated.

Counsel did not file a notice of appeal because, as the credible evidence of record demonstrates, Lotvedt had knowingly and voluntarily decided not to pursue an appeal. He chose instead to pursue relief under § 2255. Lotvedt has failed to establish that he manifestly instructed his counsel to file an appeal, and his bare assertion that he made such a request is not by itself sufficient to support a grant of relief. *See Walking Eagle*, 742 F.3d at 1082. Accordingly, I do not find any deficient performance by Pierce in failing to file a notice of appeal, and this claim should

be dismissed.

### C.  Failure to Object to Special Condition No. 5

Lotvedt next claims that "[a]s soon as Judge Holmes announced (sic) Special Condition number 5 at sentencing, Counsel had a duty to object pursuant to U.S. v Crume, 422 F.3d 728, 732-33 (8th Cir. 2005) that the condition as written was a greater deprivation of Petitioner's rights than was reasonably necessary."  (ECF No. 34, p. 8).

The Eighth Circuit has held that where the record was devoid of evidence that defendant had ever used a computer for anything beyond simply possessing child pornography, a condition of supervised release which completely barred defendant's access to computers and the internet, without first receiving written consent from a probation officer, was a greater deprivation of the defendant's First Amendment rights than was reasonably necessary.  *United States v. Crume*, 422 F.3d 728, 733 (8th Cir. 2005).  The Court explained, however, that "[i]n cases where defendants used computers or the internet to commit crimes involving greater exploitation, such restrictions have been upheld."  *Id*. (internal citations omitted).

The Eighth Circuit again considered the appropriate scope of a special condition banning internet access in *United States v. Alvarez*, 478 F.3d 864 (8th Cir. 2007), a case arising out of the Western District of Arkansas.  Alvarez compared his offense conduct with material he found online, and the Court concluded that there was no violation of the restriction announced in *Crume* where "the defendant's statements and actions may be interpreted to suggest that online material provides him encouraging, actionable ideas."  478 F.3d at 867 (internal citations omitted).  Other factors considered by the Court in *Alvarez* were that such severe restrictions on internet access "may be the only way to prevent Alvarez from accessing prohibited material," that the special condition did not

completely prohibit Alvarez's use of the internet, and that Alvarez's employment history did not indicate he had a particular day-to-day vocational need for internet access. *Id*. at 868.

Here, Lotvedt pleaded guilty to an Information charging him with using, persuading, inducing, enticing, and coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction, in violation of 18 U.S.C. §§ 2251(a) and (e). (ECF No. 15). The written Plea Agreement contains an admission of facts in support of the guilty plea which states that Lotvedt produced the image charged in the Information "such that the minor victim was intentionally touching the defendant's penis and the defendant intended that the minor touch his penis in order to arouse of gratify his sexual desire[,]" and the image was taken using a Samsung Galaxy cell phone. (ECF No. 18, ¶ 5(g)).

The PSR reported that Lotvedt had been unemployed since 2014, and his prior employment consisted of doing "side jobs" for a motel and working as a stockman at Walmart. (ECF No. 25, ¶ 100). A forensic examination of Lotvedt's Western Digital 1 TB Hard Drive revealed numerous images and videos of child pornography. (ECF No. 25, ¶¶ 26-28). Lotvedt admitted that he liked to view pornography from the internet. (ECF No. 25, ¶ 29). He admitted to using TOR browser which allowed him access to websites not normally accessible, and he understood how peer-to-peer networks functioned. (ECF No. 25, ¶¶ 31-33). He admitted to masturbating to child pornography. (ECF No. 25, ¶ 33). The PSR also reported that a 20 minute video was located on Lotvedt's Western Digital 1 TB Hard Drive depicting Lotvedt setting up a camera, and then a minor victim undressing, entering the shower, washing and masturbating, then exiting the shower and drying off. (ECF No. 25, ¶ 40). Multiple other still images of the minor victims were found on Lotvedt's cell phone. (ECF No. 25, ¶¶ 41, 43). A defendant in a related case stated he knew Lotvedt had a hidden camera

placed in secrecy to capture images of the minor victims living in the home, and that Lotvedt showed him one photo Lotvedt produced depicting a minor victim posing topless with her arms crossed over her breasts displaying her belly. (ECF No. 25, ¶ 38). Lotvedt did not object to these facts. "A fact in a PSR to which the defendant has not specifically objected is a fact admitted by the defendant." *See United States v. Abrica-Sanchez*, 808 F.3d 330, 334 (8th Cir. 2015) (quoting *United States v. White*, 447 F.3d 1029, 1032 (8th Cir. 2006)).

Addressing the nature and circumstances of the offense at Lotvedt's sentencing on October 27, 2015, the Court commented, "Mr. Lotvedt used minor stepchildren to produce sexually-suggestive images and sexually-explicit images and some of these were made with the minor's knowledge and some without whether the minor victim was asleep or through the use of a hidden camera[,]" and "[h]aving participated as a subject of some of these images, Mr. Lotvedt is also a - - he becomes a hands-on offender in the way these images were taken." (ECF No. 38, p. 19). The Court further noted that Lotvedt also possessed child pornography from other sources, and that he traded those images with another person. (Id.). Judge Holmes did not see any indication Lotvedt was going to stop victimizing his stepdaughters unless he got caught, as there was "no indication that he sought treatment, otherwise help for his issues of child pornography which led him to further start producing child pornography." (ECF No. 38, p. 20). Concerning the imposition of the special condition at issue, Judge Holmes specifically stated "one of the factors under Title 3553(a) is deterrence to protect the public, and, again, a term of imprisonment with special conditions is going to be necessary in order to protect the public and to protect others from any sort of recidivism." (ECF No. 38, p. 21).

Lotvedt presented no testimony on this issue at the evidentiary hearing. Pierce testified that

no objection to Special Condition No. 5 was made based on *Alvarez*.

Given the nature of Lotvedt's offense conduct, his admissions regarding child pornography, his knowledge and use of the TOR browser and peer-to-peer networks, his exploitation of minor victims in his household, and his lack of employment history which might suggest a vocational need for day-to-day internet access, the Court's imposition of the internet restrictions in Special Condition No. 5 of the terms of his supervised release does not constitute a greater deprivation of liberty than reasonably necessary. *See Alvarez*, 478 F.3d at 867-68, citing *United States v. Antelope*, 395 F.3d 1128, 1142 (9th Cir. 2005) (deterrence and public protection goals justify the imposition of broad restrictions on internet usage when internet usage constitutes a "step on a path towards more serious transgressions") and *United States v. Fields*, 324 F.3d 1025, 1027 (8th Cir. 2003) ("In cases where defendants used computers or the internet to commit crimes involving greater exploitation, such restrictions have been upheld.").

Considering the record, failure to object to the computer and internet restrictions imposed in Special Condition No. 5 does not constitute deficit performance of counsel. *See Larson v. United States*, 905 F.2d 218, 219 (8th Cir. 1990) (it cannot be ineffective assistance not to raise a meritless argument). Since Lotvedt has failed to show that his counsel's performance was deficient regarding this issue, there is no need to address the second *Strickland* prong of prejudice. *See United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003) (if a movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim).

**D. Failure to Request Psychological Evaluation and Competency Hearing**

Lotvedt's next ground for relief is his claim that counsel "knew Petitioner was bi-polar, he knew that Petitioner was on several mental health and pain medications that can alter his frame of

mind," and that "counsel had a duty to stop the plea hearing and request a mental health evaluation under 18 U.S.C. § 4241." (ECF No. 34, p. 10).

In his supporting Affidavit, Lotvedt asserts that at the time of his change of plea hearing he was taking Flexeril (a muscle relaxer) for back pain that made him "drousy (sic), sleepy, and out of it;" that he was taking Benadryl (an allergy medication), which made him "sleepy, drousy (sic), and light headed;" and, that he was also taking Mobic[1] that "affected my mood in general." (ECF No. 34-1, p. 3). Also attached to Lotvedt's § 2255 Motion is a medical record dated October 26, 2015 offered as proof of the medications he was taking at the time of his change of plea and sentencing. (ECF No. 34-2). Notably, the medical record shows that Lotvedt did not complain of any psychological or psychiatric impairments, nor did he report any medication side effects. (ECF No. 34-2, p. 2). A review of systems was normal, other than for constipation and lower back pain. (ECF No. 34-2, pp. 2-3). Lotvedt was alert and oriented to person, place, and time; he had a normal mood and affect; his behavior was normal; his judgment and thought content were normal; and, no assessment or diagnosis of any mental impairment was made. (ECF No. 34-2, pp. 3-4).

A careful review of the evidence does not support Lotvedt's claim that counsel was deficient for failing to request a psychological evaluation and mental competency hearing.

Counsel's failure to request a competency hearing is objectively unreasonable if evidence raises a substantial doubt about a defendant's mental competence to stand trial. *Ford v. Bowersox*, 256 F.3d 783, 786 (8th Cir. 2001). "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings." *Id*. (emphasis

---

[1] Which Lotvedt describes as an anti-depressant. In fact, Mobic (Meloxicam) is a nonsteroidal anti-inflammatory drug. Https://www.drugs.com/mobic.html (Last viewed on September 18, 2016).

in original) (internal citation omitted). A defendant is competent to stand trial or face sentencing if he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has rational as well as factual understanding of the proceedings against him. *Id*. (internal citation omitted); *United States v. Dahl*, 807 F.3d 900, 904 (8th Cir. 2015) (internal citation omitted).

"Although no 'fixed or immutable' signs create sufficient doubt about competence, pretrial behavior, demeanor during trial, and previous medical opinions regarding competency are relevant considerations." *Ford*, 256 F.3d at 786 (internal citation omitted). "Mental illness and cognitive impairment are not synonymous with incompetence, however, and 'a mental deficiency or ... bizarre, volatile, and irrational behavior does not necessarily make [a defendant] incompetent to stand trial.'" *Dahl*, 807 F.3d at 904 (internal citation omitted); *United States v. Whittington*, 586 F.3d 613, 618 (8th Cir. 2009).

A Pretrial Services Report was prepared by the United States Probation Office prior to Lotvedt's arraignment. (ECF No. 5). Lotvedt reported a self-diagnosis of bi-polar disorder and depression, and that he had suffered from depression at age 16. Lotvedt's wife reported that he was in the process of seeking mental health counseling at the time of his arrest. (ECF No. 5, p. 2). At his arraignment on April 21, 2015, Lotvedt stated that he was only taking "OTC meds" at the time, and that there was nothing about those medications that impaired his ability to comprehend or participate in the proceedings. (ECF No. 45, pp. 2-3). He advised that he had plans to see a doctor for depression and anxiety, but he expressed an understanding of why he was in court, his constitutional rights, and what had been said to him regarding the Indictment. (ECF No. 45, pp. 3-4). He informed the Court that he understood the nature of the charges and the possible penalties. (ECF

No. 45, p. 8).

At his change of plea hearing on June 4, 2015, Lotvedt denied any recent treatment for any mental illness or addiction to narcotic drugs. (ECF No. 37, p. 4). When asked if he understood what was happening in the proceedings, Lotvedt responded, "[y]es, I do, Your Honor." (Id.). He expressed satisfaction with the counsel, representation, and advice of his attorney. (Id.). Inquiry was made by the Court about Lotvedt's execution of a Waiver of Indictment, and the Court stated, "[i]t's the finding of the Court ... that the Defendant is fully competent and capable of entering into a knowing and voluntary waiver and the waiver is therefore being accepted ..." (ECF No. 37, p. 6). Lotvedt confirmed that the written Plea Agreement had been explained to him; that he signed it; that he had an opportunity to read and discuss the Plea Agreement with Pierce before signing it; that he understood the Plea Agreement; that no promises or assurances of any kind, other than those contained in the Plea Agreement, were made by anyone to get him to sign the Plea Agreement; and, that nobody attempted to force him to plead guilty. (ECF No. 37, pp. 7-8). The statutory range of imprisonment, a mandatory minimum of 15 years up to a maximum term of 30 years, was explained to Lotvedt, and he stated his understanding. (ECF No. 37, pp. 8-9). Lotvedt also expressed his understanding that the sentence imposed may be different than any estimate his attorney had given him. (ECF No. 37, p. 10). After the Government presented a factual basis for the offense charged in the Information, Lotvedt admitted that the Government could prove the factual basis for the charge if the case were to proceed to trial. (ECF No. 37, p. 15). Upon such inquiry, the Court found "the Defendant is fully competent and capable of entering an informed plea, that the Defendant is aware of the nature of the charge and the consequences of his guilty plea[,] and the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing all of the essential

elements of the offense to which the Defendant is pleading guilty." (ECF No. 37, p. 16).

Lotvedt testified at the evidentiary hearing that he suffers from ADHD, depression, and bi-polar disorder. He said he attempted suicide at age 14 and was hospitalized for one week, and that he tried to commit suicide again at age 18 by jumping off a bridge. He said he did not seek any further mental health treatment due to financial hardship. Lotvedt claimed he asked attorney Pierce for a psychological evaluation, and that Pierce put off the matter telling him they would talk about it later, but that he did not think it would help. Lotvedt stated they did not speak about it again until after the change of plea, and Pierce was dismissive of it.

Pierce testified that while Lotvedt told him of having depression as a child, there was "not at any time" reason to question Lotvedt's fitness to proceed with the Plea Agreement or to stand trial. He reviewed the written Plea Agreement with Lotvedt and prepared him for the change of plea hearing. Pierce reviewed the PSR with Lotvedt, and Lotvedt raised no issue with respect to the mental health section. Investigator Marquez also testified that based on his observations of Lotvedt there was no reason to believe he was not competent. Marquez was also present when the PSR was reviewed, and Lotvedt voiced no objection to the mental health section of the PSR.

Lotvedt argues that his case is similar to *Thomas v. Lockhart*, 738 F.2d 304 (8th Cir. 1984). The Court there found Thomas' attorney ineffective because he failed to properly investigate the seriousness of the mental problems from which Thomas suffered. The facts in *Thomas* are clearly distinguishable from those in the present case.

Thomas had been in the state mental hospital five times within the four years immediately prior to the rape he was convicted of. He had taken an overdose of drugs on one occasion only four days after release from the hospital. At the time of his last release from the hospital, he was placed

under the supervision of the local mental health center.  He was under medication at the time of his arrest; he did not receive his medication while in jail; and, he had been without the medication for a substantial period of time when he entered his guilty plea.  *Thomas*, 738 F.2d at 308.

In sharp contrast to the facts in *Thomas*, Lotvedt, age 29 at the time of his arrest (ECF No. 25, p. 2), had not sought any mental health treatment since approximately age 16 (ECF No. 25, ¶ 96). While Lotvedt claims he planned to seek treatment for depression and anxiety, there is no evidence before the Court that he actually took any steps to do so.  When he was seen by a medical professional on October 26, 2015, one day before his sentencing, his only complaints were of constipation and lower back pain.  (ECF No. 34-2, p. 2).  He gave no past history of any mental health impairments; no medication side effects were reported; a review of systems was otherwise normal; his psychiatric exam was normal; and, no diagnosis of any mental illness was noted.  (ECF No. 34-2, pp. 2-4).

It is a defendant's burden to show that he is incompetent by a preponderance of the evidence. *Vogt v. United States*, 88 F.3d 587, 591 (8th Cir. 1996).  Lotvedt has failed to do so.  There is simply nothing in Lotvedt's pretrial behavior, his demeanor during the change of plea and sentencing hearings, and in the medical evidence that raises a substantial doubt about Lotvedt's mental competence.  Accordingly, his claim of ineffective assistance of counsel for failure to request a psychological evaluation and competency hearing is without merit.

### E.  No Promise of Specific Sentence Induced the Plea Agreement

For his final ground for relief, Lotvedt claims "[a]ttorney James Pierce told me and my family that if I plead guilty, I would only get 15 years guaranteed." (ECF No. 34-1, p. 2).  Lotvedt's mother, Sheila Lotvedt, signed an affidavit stating "James b. (sic) Pierce told me that if my son took and

signed his plea agreement, he would be guaranteed 15 years but my son got much more." (ECF No. 34-3, p. 2). Lotvedt's wife, Amber Lotvedt, signed an affidavit stating that she was told by attorney Pierce "that my husband would be guaranteed 15 years and only 15 years in prison if he took his plea agreement. . ." (ECF No. 34-3, p. 3).

It is well established in the Eighth Circuit that a defendant who pleads guilty waives all non-jurisdictional defects or errors. *See United States v. Stewart*, 972 F.2d 216, 217-18 (8th Cir. 1992) (citing *Hill v. United States*, 928 F.2d 303 (8th Cir. 1991)) and *Smith v. United States*, 876 F.2d 655, 657 (8th Cir. 1989). Having solemnly admitted his guilt in open court, Lotvedt may only attack the voluntary and intelligent character of his guilty plea by showing that the advice he received from Pierce was not within the range of competence demanded of attorneys in criminal cases. *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases."). Contrary to Lotvedt's averments, the files and records of this case, and the evidence presented at the evidentiary hearing, conclusively shows that there was no promise or guarantee of a specific sentence.

To begin with, the written Plea Agreement (ECF No. 18) specifically provides otherwise. Lotvedt expressly acknowledged in the Plea Agreement that the Court shall consult and take into account the United States Sentencing Commission Guidelines in determining the sentence, and that the Court "may sentence the defendant to any reasonable sentence within the statutory range." (ECF No. 18, ¶ 19). The Eighth Circuit has long recognized that "as long as the district court tells a defendant the statutory range of punishment that he faces and informs him that the sentencing guidelines will be used in determining the sentence, the plea is binding," and "*[t]his is true even*

*when the misunderstanding is caused by defense counsel's erroneous estimation of what the ultimate sentence will be*." *United States v. Vennes*, 103 F. Supp.3d 979, 996 (D.MN. 2015) (emphasis in original) (quoting *United States v. Ramirez-Hernandez*, 449 F.3d 824, 826 (8th Cir. 2006). "In other words, a defendant cannot show he was prejudiced from his attorney's advice, no matter how inaccurate it might have been, if the district court essentially cures that inaccurate advice by correctly informing the defendant of his potential sentence." *Id*. (internal citations omitted).

Further, under the heading "AGREEMENT DOES NOT PROMISE A SPECIFIC SENTENCE," Lotvedt agreed that any discussions concerning the possible guideline range "merely attempt to guess at what appears to be the correct guideline range and do not bind the district court[,]" that "the actual range may be greater than contemplated by the parties[,]" and "[i]n the event that the actual guideline range is greater than the parties expected, the defendant agrees that this does not give him the right to withdraw his plea of guilty." (ECF No. 18, ¶ 20). Lotvedt also agreed that "nothing in this agreement binds the district court to: ... hand down any specific sentence." (ECF No. 18, ¶ 27(c)).

By signing the Plea Agreement, Lotvedt acknowledged: that he had read the agreement (or has had the agreement read to him) and "has carefully reviewed every part of it with defense counsel;" that he "fully understands this plea agreement and is not under the influence of anything that could impede [his] ability to fully understand this plea agreement;" that "no promises, agreements, understandings, or conditions have been made or entered into in connection with the decision to pleas guilty except those set forth in this plea agreement;" that he "is satisfied with the legal services provided by defense counsel in connection with this plea agreement and matters related to it;" and, that he "has entered into this plea agreement freely, voluntarily, and without

reservation and [his] desire to enter a plea of guilty is not the result of threats or coercion directed at [him] or anyone connected with [him]."  (ECF No. 18, ¶ 31).

Similar representations were made by Lotvedt at the change of plea hearing on June 4, 2015. After being sworn on oath (ECF No. 37, p. 3), Lotvedt confirmed that the Plea Agreement had been explained to him; that it bore his signature; that he had an opportunity to read and discuss the Plea Agreement with counsel before signing it; that it contained his full understanding of the agreement he and Pierce had negotiated with the Government; that he understood the agreement; that no one made any promises or assurances to him of any kind to get him to sign the agreement other than what is in the agreement itself; and, that no one attempted to force him to plead guilty.  (ECF No. 37, pp. 7-8).  Lotvedt acknowledged Pierce had talked to him about the Federal Sentencing Guidelines and how they might apply to his case.  (ECF No. 37, p. 9).  Of particular significance to the present claim, Lotvedt expressed understanding that "the sentence imposed may be different than any estimate your attorney has given you."  (ECF No. 37, p. 10).

At no time during either the change of plea hearing held on June 4, 2015 or the sentencing hearing held on October 27, 2015 did Lotvedt inform the Court that Pierce had promised him a specific sentence of only 15 years imprisonment.

At the evidentiary hearing, Lotvedt testified that Pierce told him the sentence would "probably be no more than 18 years," but that 15 years was "more than likely."  Lotvedt also testified Pierce told him the worst case scenario was 30 years.

Lotvedt's mother, Sheila Lotvedt, testified she spoke with Pierce a couple of times.  She stated Pierce told her that her son would "probably get life" if he went to trial, but he would get 15 years if he pleaded guilty.  She did not attend the sentencing.  By way of impeachment, the

Government introduced evidence that Sheila Lotvedt had been convicted of fraudulent use of a credit card on January 20, 2017. (Government Exhibit 3).

Lotvedt's wife, Amber Lotvedt, also testified she spoke with Pierce a couple of times. She recalled that prior to the plea agreement Pierce said her husband would "more than likely" get 15 years imprisonment. She did not attend the change of plea hearing. She admitted she "would do anything" for her husband. By way of impeachment, the Government introduced evidence that Amber Lotvedt had been convicted of felony delivery of a Schedule I controlled substance on May 19, 2017. (Government Exhibit 4).

The testimony of Lotvedt and his witnesses reflects only that Pierce expressed his belief that Lotvedt would "more than likely" be sentenced to a term of 15 years imprisonment, "probably no more than 18 years," but that Lotvedt was also advised of the statutory maximum of 30 years. Such testimony falls well short of demonstrating that Pierce "guaranteed" a specific sentence of 15 years.

Pierce testified that after reviewing the Plea Agreement and obtaining Lotvedt's signature on it, he then held the Plea Agreement for a couple of days at Lotvedt's request so Lotvedt could discuss it with his family. Lotvedt subsequently called Pierce to say it was okay to proceed. Pierce had discussed the federal sentencing guidelines with Lotvedt. A lengthy and detailed Sentencing Memorandum was filed on Lotvedt's behalf on October 26, 2015, in which Pierce advocated for imposition of the mandatory minimum sentence of 15 years. (ECF No. 29). Pierce denied making any "guarantee" of a 15 year sentence to Lotvedt. Investigator Marquez also testified that no promise of any specific sentence was made to Lotvedt.

In light of Pierce's experience as defense counsel, and considering the representations made by Lotvedt in the Plea Agreement and at his change of plea hearing, and further taking into account

the testimony presented at the evidentiary hearing, I find Pierce's testimony that he made no "guarantee" of a specific sentence to be credible.

Lotvedt also faulted Pierce during the evidentiary hearing for not negotiating a better plea agreement – one under which Lotvedt could have pleaded guilty to mere possession of child pornography. Pierce well understood Lotvedt's desire to plead guilty only to a charge of possession of child pornography. Pierce testified that the Government's evidence "gut shot" any hope of Lotvedt pleading guilty just to possession of child pornography, but that he did make such a request to the Government's attorney. The Government's attorney refused. The Plea Agreement (ECF No. 18) allowed Lotvedt to plead guilty to one count of using, persuading, inducing, enticing, and coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction, in violation of 18 U.S.C. §§ 2251(a) and (e), when Lotvedt's conduct as reported in the PSR could have supported multiple charges. The Court also notes that where a defendant has pleaded guilty, courts have rejected claims that defense counsel was ineffective for failing to obtain a more favorable plea agreement. *See, e.g., Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006); *Craker v. McCotter*, 805 F.2d 538, 542 (5th Cir. 1986); and, *Estabrook v. United States*, 2012 WL 4981147 (D.N.D. 2012) (citing *Bethel* and *Craker*) (claim that defense counsel was ineffective for failure to negotiate a more favorable plea agreement failed to properly allege prejudice and was deficient as a matter of law).

Pierce argued at sentencing that Lotvedt's conduct was not as detestable as conduct seen in other production of child pornography cases, and he advocated for a downward variance from the advisory Guidelines sentence of 360 months. (ECF No. 38, pp. 15-19). His efforts were clearly effective, as the Court agreed that the Guidelines "do not distinguish really between the worst

offenders and the least offenders" (ECF No. 38, p. 21), and the Court did vary downward from the advisory Guidelines sentence of 360 months to impose a sentence of 300 months imprisonment.

Under the circumstances, Pierce acted "within the range of competence demanded of attorneys in criminal cases" in connection with the plea negotiations and at sentencing.

Next, in order to show *Strickland* prejudice Lotvedt must show a reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on proceeding to trial. While Lotvedt claims he would have insisted on going to trial had Pierce not promised a 15 year sentence (ECF No. 34, pp. 13-14), Lotvedt's testimony on cross-examination at the evidentiary hearing made clear that he did not want to go to trial because "I would have been found guilty . . . all sex offenders are." Lotvedt has not, therefore, met the prejudice requirement where a guilty plea is challenged. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (where a guilty plea is challenged under the second prong of the *Strickland* test the "defendant must show that . . . he would not have pleaded guilty and would have insisted on going to trial"); and, *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1103 (8th Cir. 2011) (no facts to show that counsel's advice during plea negotiations "fell below an objective standard of reasonableness," and that there exists "a reasonable probability that, but for counsel's errors, [defendant] would not have [pleaded] guilty and would have insisted on going to trial").

By voluntarily and intelligently entering his guilty plea Lotvedt waived all non-jurisdictional defects and errors that occurred prior to his guilty plea; he has not shown that his guilty plea was involuntary and unintelligent; he has not shown deficient performance by his counsel in connection with the plea negotiations or at sentencing; and, he has not shown any prejudice resulting from any alleged ineffective assistance of counsel. Accordingly, Lotvedt's claim that his guilty plea was

induced by a false promise of a specific sentence made by counsel should be denied.

### F.  No Certificate of Appealability is Warranted

A Certificate of Appealability may issue under 28 U.S.C.§ 2253 only if the applicant has made a substantial showing of the denial of a constitutional right.  A "substantial showing" is one demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the petitioner did not prevail on the merits in the court considering his case at present.  *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

For the reasons discussed above, I conclude that Lotvedt has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### III.  Conclusion

I recommend that Lotvedt's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 34) be **DISMISSED with PREJUDICE**.  I further recommend that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of September 2017.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

-26-